NUMBER 13-99-027-CV 



COURT OF APPEALS 



THIRTEENTH DISTRICT OF TEXAS 



CORPUS CHRISTI 

___________________________________________________________________ 



WAL-MART STORES, INC., Appellant, 



v. 



ARACELI VILLARREAL, ET AL., Appellees. 

___________________________________________________________________ 



On appeal from the 275th District Court 

of Hidalgo County, Texas. 

___________________________________________________________________ 



O P I N I O N 



Before Chief Justice Seerden and Justices Hinojosa and
Yañez 

Opinion by Chief Justice Seerden 



This is an appeal from a judgment awarding Araceli Villarreal, appellee, $98,000 in
damages following a slip and fall incident. By four issues, Wal-Mart, appellant,
challenges: (1) the trial court's grant of directed verdict in Villarreal's favor; (2) the
sufficiency of the evidence to support findings of liability; and (3) the sufficiency of
the evidence to support the damages finding. We affirm. 

Villarreal was employed by National Hair Care Center. Her employer leased space inside
a Wal-Mart store in Hidalgo County, from which it operated. Villarreal worked in this
leased space. While employed by National Hair Care Center, Villarreal was responsible,
among other things, for trash removal. 

All tenants in the Wal-Mart store disposed of their trash in the Wal-Mart trash
compactor, located in the shipping and receiving area of the Wal-Mart store. On January
20, 1995, within the scope of her employment, Villarreal took her store's trash to the
Wal-Mart trash compactor. Upon entering the shipping and receiving area, Villarreal
slipped and fell on what she believed was a water spill. There were no witnesses to this
accident. Villarreal reported the accident and a Wal-Mart employee was instructed to clean
up the spill. 

Villarreal and her husband subsequently brought this action against Wal-Mart, claiming
its negligence caused her injuries. The case was tried to a jury. At the conclusion of
Villarreal's case in chief, Wal-Mart moved for directed verdict on the issues of
Villarreal's status as a licensee, her failure to present legally sufficient evidence of
actual or constructive notice of the spill, and Villarreal's failure to use ordinary care
for her own safety. The trial court denied the motion. After Wal-Mart presented its
evidence, Villarreal moved for directed verdict as to her status as an invitee. The court
granted this motion and submitted the case to the jury for findings of liability and
damages. The jury found Wal-Mart negligent and awarded $98,000 in actual damages. Wal-Mart
then moved for judgment notwithstanding the verdict, new trial, or remittitur. Those
motions were overruled and this appeal ensued. 

By its first issue, Wal-Mart challenges the trial court's grant of directed verdict in
Villarreal's favor on the issue of her status as an invitee. 

The duties owed by a landowner to one on its property depend upon the status of the
person who is injured on the property. An "invitee" enters onto another's land
at the express or implied invitation of the owner or operator for their mutual economic
benefit or mutual advantage. See Rosas v. Buddies Food Store, 518 S.W.2d 534, 536
(Tex. 1975); Long Island Owner's Ass'n, Inc. v. Davidson, 965 S.W.2d 674, 682
(Tex. App.--Corpus Christi 1998, pet. denied); Pinkerton's v. Manriquez, 964
S.W.2d 39, 45 (Tex. App.--Houston [14th Dist.] 1997, pet. denied); Richardson v.
Wal-Mart Stores, Inc., 963 S.W.2d 162, 165 (Tex. App.--Texarkana 1998, no pet.);
Montes v. Indian Cliffs Ranch, Inc., 946 S.W.2d 103, 105 (Tex. App.--El Paso 1997,
writ denied). By contrast, a "licensee" is privileged to enter and remain on the
premises by the express or implied permission of the owner, but enters the land for his
own convenience or on business for someone other than the owner. Texas-Louisiana Power
Co. v. Webster, 91 S.W.2d 302, 306 (1936). In the absence of a relationship that
inures to the mutual benefit of the entrant and the owner, an entrant is considered a
licensee. Weaver v. KFC Mgmt, Inc., 750 S.W.2d 24, 26 (Tex. App.--Dallas 1988,
writ denied). The question of whether an individual is a licensee or an invitee is a
question of law. Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525
(Tex. 1990). 

We review the trial court's grant of directed verdict de novo. Parks v.
DeWitt County Elec. Co-op., Inc., 962 S.W.2d 707, 710 (Tex. App.--Corpus Christi
1998, no pet.). We consider the evidence in the light most favorable to the non-movant,
disregarding all contrary evidence and inferences. Id. (citing Henderson v.
Travelers Ins. Co., 544 S.W.2d 649, 650 (Tex. 1976)). Thus, a directed verdict is
"warranted only when the evidence conclusively demonstrates that no other verdict
could be rendered." Bywaters v. Gannon, 686 S.W.2d 593, 595 (Tex. 1986). 

In analyzing this situation, we look to the broad relationship between the parties. The
evidence shows that Villarreal's employer leased its location from Wal-Mart. No contract
was entered into evidence. Nevertheless, neither side disputes that a lease agreement
exists. Such an agreement clearly inures to the mutual benefit of the parties. Moreover,
both sides agree that as a condition of the lease agreement, National Hair Care Center was
required to maintain its facility. Either expressly or implicitly, Wal-Mart provided
National Hair Care Center with access to its trash compactor facility. Thus, as to
National Hair Care Center and its employees or agents, the trash compactor facility was
essentially a common area. As between a landlord and a tenant, once an area becomes a
common area, the landlord owes the tenant the duty owed to an invitee. See Dickinson
Arms-REO, L.P. v. Campbell, 4 S.W.3d 333, 336 (Tex. App.--Houston [1st Dist.] 1999,
no pet. h.). Accordingly, we conclude that Villarreal was properly designated an invitee,
or more precisely a "business invitee," by the trial court. Wal-Mart's first
issue is overruled. (1) 

By its third issue, Wal-Mart argues that the trial court should have granted its motion
for judgment notwithstanding the verdict or new trial because the evidence is legally and
factually insufficient to support a finding of liability. Wal-Mart specifically contends
that there is no evidence that it possessed constructive knowledge of "the
condition" and that the existence of boxes in the trash compactor area does not
constitute an unreasonable risk of harm. 

In reviewing a challenge to the legal sufficiency of the evidence supporting a jury's
verdict, we only consider the evidence and inferences tending to support that verdict.
This evidence must be viewed in a light most favorable to the verdict. We disregard any
evidence or inferences to the contrary. Sherman v. First Nat'l Bank, 760 S.W.2d
240, 242 (Tex. 1988); Soto v. Sea-Road Intern., Inc., 942 S.W.2d 67, 71 (Tex.
App.--Corpus Christi 1997, pet. denied). So long as there is more than a scintilla of
evidence that supports the verdict, the challenge must be overruled. Id. By
contrast, in considering the factual sufficiency of the evidence, we examine all of the
evidence, regardless of its effect on the reviewed verdict. Lofton v. Texas Brine
Corp., 720 S.W.2d 804, 805 (Tex. 1986); Soto, 942 S.W.2d at 71. We may
reverse the challenged verdict only if it is "so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust." Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986); Superior Phones, Ltd. v. Cherokee Comm., Inc., 964 S.W.2d
325, 330 (Tex. App.--Corpus Christi 1998, pet. denied). 

A landowner's duty to an invitee requires him or her to exercise ordinary care to
protect the invitee from risks of which the owner is actually aware and those risks of
which the owner should be aware after reasonable inspection. Motel 6 G.P., Inc. v.
Lopez, 929 S.W.2d 1, 3 (Tex. 1996). To recover, a plaintiff must plead and prove that
the landowner: (1) had actual or constructive knowledge of some condition on the premises;
(2) that the condition posed an unreasonable risk of harm; (3) that the landowner did not
exercise reasonable care to reduce or eliminate the risk; and (4) that the landowner's
failure to use such care proximately caused the plaintiff's injuries. Lopez, 929
S.W.2d at 3; Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). 

In her amended original petition, Villarreal alleged six bases of liability, namely: 

(1) Maintaining trash compactor area in a manner that foreseeably hid the danger of the
spilled liquid on the ground; 

(2) Failing to provide reasonably safe lighting of said area; 

(3) Failing to notify, warn, advise, and/or instruct plaintiff of the dangerous
condition; 

(4) Failing to give adequate and comprehensible warnings to plaintiff of the dangerous
condition; 

(5) Failure to properly instruct and maintain the area in question to discover the
dangerous condition; 

(6) Failure to apply non-skid mats in the area in question to prevent the dangerous
condition. 



The jury was charged regarding the general negligence of either Villarreal or Wal-Mart
in proximately causing her injuries, but not as to any specific causes. Wal-Mart does not
contest the specificity of the jury charge in this respect. 

The record reflects that the trash compactor is located in the shipping and receiving
area in the back of the Wal-Mart store in question. When asked to describe the area around
the time of her accident, Villarreal recalled that merchandise was stacked up in the area
and "trash was all around." She furthermore described the floor as very slick
and that the shade from boxes made seeing what she described as "spots" on the
floor difficult. Both her husband(2) and the manager of the
hair salon, Maribel Quinones, corroborated these general observations regarding the
shipping area, although neither was present at the time of this incident. Quinones,
however, testified that lighting in the area was generally "normal." 

Villarreal stated that she fell in a spill of liquid approximately two feet by two
feet. After getting back to her feet, she informed an assistant manager, Ray Rosales, of
the spill and her fall. According to his testimony, Rosales was taken to the site of the
accident where he observed a spill which he immediately had cleaned. Rosales did not
dispute either that the spill existed or that the spill had caused Villarreal's fall.
Villarreal informed Quinones of the accident as well. Quinones noted that the back of
Villarreal's clothes were wet after the fall. 

Villarreal testified that on several occasions she had noticed that her sight was
limited in the shipping and receiving area due to the shade from the stacked boxes. She
stated that she had commented to "some of the people" in the shipping area that
the situation might be dangerous and that nothing was ever done to remedy the situation.
She could not recall the names of any Wal-Mart employees to whom she had addressed her
concerns; however, according to Rosales, only Wal-Mart's employees and business invitees
were permitted in the shipping and receiving area. Villarreal also testified that stains
from liquid spills were present "all the time." She stated that she observed no
warning signs or cones at the time of her fall. 

The jury was charged generally regarding Wal-Mart's failure to maintain the shipping
and receiving area in a safe condition. Villarreal pleaded that any one of several
dangerous conditions caused her fall. The evidence permitted the jury to conclude that
Wal-Mart had actual or constructive knowledge that the overall condition of its shipping
and receiving area had created visual difficulties and that spills often occurred there.
It was within the province of the jury to conclude that the limited visibility, coupled
with the frequency of spills in the area, posed an unreasonable risk of harm. The evidence
also permitted the jury to conclude that, despite its knowledge of this risk, Wal-Mart
took no action to eliminate it. Finally, the evidence supports the jury's finding that
Wal-Mart's failure to eliminate or alleviate the risk proximately caused Villarreal's
injuries. Accordingly, Wal-Mart's third issue is overruled.(3)


By its fourth and final issue, Wal-Mart argues that the trial court improperly
submitted a damage element for loss of earning capacity because there is no evidence or
factually insufficient evidence to support an award of those damages. In the alternative,
Wal-Mart argues that the award of $98,000 is grossly excessive and should be remitted. 

The court submitted the damages element in broad form, asking for an aggregate damages
total for past medical care, physical pain and mental anguish, physical impairment, loss
of earning capacity, and disfigurement. By its own admission, Wal-Mart challenges only the
sufficiency of the evidence to support damages for loss of earning capacity. 

When the damages issue is submitted to the jury in broad form, it is difficult to
ascertain with certainty what portion of the award is attributable to each element
considered. Greater Houston Transp. Co. v. Zrubeck, 850 S.W.2d 579, 589 (Tex.
App.--Corpus Christi 1993, writ denied). A meaningful review of the damages issue is also
difficult. The only effective way a defendant can challenge a multi-element damages award
on appeal is to "address each and every element and show that not a single element is
supported by sufficient evidence." Id.; see also Brookshire Bros., Inc. v. Lewis,
997 S.W.2d 908, 922 (Tex. App.--Beaumont 1999, no pet. h.); Amelia's Automotive, Inc.
v. Rodriguez, 921 S.W.2d 767, 771 (Tex. App.--San Antonio 1996, no writ). Some courts
have concluded that the "failure to address an element of damages results in waiver
of the sufficiency challenge." Brookshire Bros, 997 S.W.2d at 922; Price
v. Short, 931 S.W.2d 677, 688 (Tex. App.--Dallas 1996, no writ); Haryanto v.
Saeed, 860 S.W.2d 913, 922 (Tex. App.--Houston [14th Dist.] 1993, writ denied). This
court has, instead, overruled such challenges if just one element is supported by the
evidence. Zrubeck, 850 S.W.2d at 589. 

The record reflects that, without objection from Wal-Mart, Villarreal's exhibit number
twenty-four was admitted and subsequently published to the jury. This exhibit details the
aggregation of Villarreal's "Proved Up Medical Specials," and lists the full
amount of medical expenses as $42,515.67. Villarreal also described in some detail the
pain she felt in her back after the fall. She testified that she felt pain in her lower
back, neck, and hand. Villarreal testified that the pain in her back persisted for some
time and that treatment at a chiropractic center did nothing to eliminate it. She was
recommended to Dr. Ruben Pechero, M.D., who determined that she had suffered a herniated
disc at L5 of the lumbar spine. The herniated disc required surgery. On June 5, 1995,
Villarreal underwent a lumbar laminectomy and fusion. The surgery left a long scar along
Villarreal's lower back. She testified that she now has difficulty controlling her bladder
and cannot have any more children. The surgery has resulted in permanent limitations to
Villarreal's activities and restricts her employability. 

Wal-Mart presented no evidence to contradict any of Villarreal's claims. 

We find that the evidence was factually sufficient to support the jury's award on at
least one of the damages elements. Because the evidence supports at least one of the
elements of the broad form submission, we affirm the entire award. Thus, Wal-Mart's fourth
issue is overruled. 

The judgment of the trial court is AFFIRMED. 





__________________________________ 

ROBERT J. SEERDEN, Chief Justice 



Do not publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed 

this 23rd day of March, 2000. 

1. By its second issue, Wal-Mart argues that "As a licensee
Villarreal failed in her burden to raise a fact question on each of the required elements
of her claim against Wal-Mart. Therefore, had the jury been instructed properly as to
Wal-Mart's duty, there is no evidence to support a finding against Wal-Mart and the
judgment must be reversed and rendered." Because we conclude that Villarreal was an
invitee rather than a licensee, we overrule this issue. 

2. According to his testimony, Cesar Villarreal accompanied his wife
to the trash compactor on several occasions during her employment at this particular
location. 

3. By implication, Wal-Mart argues that Villarreal was aware of the
possible risk, thereby mitigating its liability. However, because we have concluded that
Villarreal was an invitee rather than a licensee, her knowledge of the risk is not
relevant here.