David W. ROWLAND, Appellant,

v.

CITY OF CORPUS CHRISTI,
Texas, Appellee.

No. 1737.

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 24, 1981.

Rehearing Denied Sept. 17, 1981.

Russell H. McMains, Edwards & Perry, Corpus Christi, for appellant.

Richard A. Hall, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit brought by appellant, David W. Rowland, against appellee, the City of Corpus Christi, for personal injuries sustained when Rowland dived from the seawall into the marina waters of the Corpus Christi Bay. In response to special issues, the jury found in favor of Rowland. The trial judge, however, granted the City's motion for judgment non obstante veredicto and entered a take-nothing judgment against Rowland. Rowland appeals.

Just before dusk on August 14, 1978, David Rowland dived from the seawall of the Corpus Christi Bay into the marina breakwaters and sustained a broken neck. Rowland brought suit for damages against the City, alleging that the City knew or should have known and that the City failed to give him proper warning of the condition which caused his injury. The City answered denying any liability, contending that the accident was proximately caused by the negligence of Rowland himself; that Rowland was a trespasser since he was swimming in an area where swimming was prohibited by ordinance; and/or that the City was immune from liability by virtue of the Texas Tort Claims Act.

The jury found in response to special issues, inter alia, that: 1) the condition of the area where Rowland dived into the water was a dangerous condition; 2) that the City had knowledge of such dangerous condition; 3) that the City in the exercise of ordinary care should have discovered such dangerous condition; and 4) that the sign "Caution Deep Water Lower Steps Slippery When Wet" failed to give adequate and proper warning of the dangerous condition. Following the verdict, the City filed a motion for judgment non obstante veredicto. The motion stated that there was no evidence which could give rise to a duty on the part of the City, the breach of which would form the basis of liability to Rowland. The City argued in its motion that, as a matter of law, Rowland was a trespasser by reason of his entrance into the water at a place where swimming was prohibited by ordinance, or in the alternative, he was a mere licensee. Therefore, as a trespasser, the City's only duty to Rowland was to avoid injuring him intentionally or through gross negligence. The City argues, in the alternative, that if Rowland was a licensee, then its only duty was to make safe or warn him of the dangerous condition of which the City had knowledge.

The trial court granted the City's motion for judgment non obstante veredicto without specifying the ground upon which it relied and entered judgment against Rowland. Rowland appeals. In his appeal, he brings forth eight points of error. The first seven points will be grouped together for discussion since they all center on the contention that the trial court erred in granting the City's motion for judgment non obstante veredicto.

The granting of a motion for judgment non obstante veredicto is justified only when an instructed verdict is proper. Rule 301, T.R.C.P. It is proper only under very limited circumstances, i. e., 1) that a defect (specifically indicated) in the opponent's pleading makes it insufficient to support a judgment; 2) the truth of fact propositions which, under the substantive law, establish the right of the movant, or negative the right of his opponent to judgment; or 3) that the evidence is insufficient to raise an issue as to one or more fact propo-

sitions which must be established for the opponent to be entitled to judgment. *Elliott v. Elliott*, 597 S.W.2d 795 (Tex.Civ.App. —Corpus Christi 1980, no writ); *Hendrix v. Jones-Lake Const. Co.*, 570 S.W.2d 546 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ); McDonald, Texas Civil Practice, § 11.28.1 (1970).

The court, in acting on such motion, must consider all of the evidence in the light most favorable to support the jury's findings, and every reasonable intendment deducible from the evidence must be indulged in favor of the verdict. Only the evidence and inferences therefrom that support the jury findings should be considered, with all contrary evidence and inferences being rejected. *Elliott v. Elliott*, supra; *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812 (Tex.1979). *Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex.1974).

 In order to review the evidence in accordance with the above standards, we must first determine the status of Rowland at the time of the accident. Was he an invitee, licensee or trespasser? If Rowland was an invitee, the City had a duty to keep the premises in a reasonably safe condition and to inspect the premises to discover any latent defects and to make safe any defect or give adequate warning. *Carlisle v. J. Weingarten, Inc.*, 137 Tex. 220, 152 S.W.2d 1073 (1941); *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.1972). If, on the other hand, Rowland was a licensee, then the City owed Rowland a duty to not injure him willfully, wantonly or through gross negligence, and to warn or make safe dangerous conditions of which it had actual knowledge. *Burton Construction & Ship Building Company v. Broussard*, 154 Tex. 50, 273 S.W.2d 598 (1954); *State v. Tennison*, 509 S.W.2d 560 (Tex.1974); *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976); *Billstrom v. Memorial Medical Center*, 598 S.W.2d 642 (Tex. Civ.App.—Corpus Christi 1980, no writ). However, if Rowland was a trespasser, the City only owed him a duty not to injure him

willfully, wantonly or through gross negligence. *Texas-Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302 (1936); *Hopkins v. Texas Power & Light Company*, 514 S.W.2d 143 (Tex.Civ.App.—Dallas 1974, no writ).

 In determining whether a person is an invitee, the general test is whether the injured person at the time of the injury has present business relations with the owner of the premises which would render his presence of mutual aid to both. In determining whether a person is a licensee, the general test is whether his presence on the premises was for his own convenience, or on business with someone other than the owner of the premises. In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied and the injured person must be regarded as a mere licensee. *Texas Power & Light Company v. Holder*, 385 S.W.2d 873 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); *Mendez v. Knights of Columbus Hall*, 431 S.W.2d 29 (Tex.Civ.App.—San Antonio 1968, no writ). A licensee is a person whose entrance upon or use of the premises of another is permitted by the owner under such circumstances that he is not a trespasser but is without any express or implied invitation. He is on the premises by sufferance and not by virtue of any business or contractual relations with, or any enticement, allurement, or inducement to enter being held out to him by the owner or occupant, but merely in his own interest or for his own purposes, benefits, convenience or pleasure. *Texas Power & Light v. Holder*, supra; *Mendez v. Knights of Columbus Hall*, supra.

 A person is a trespasser where he enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or per-

son in charge. *Texas-Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302 (1936); *Texas Power & Light Company v. Holder, supra.*

According to the established guidelines set forth above, Rowland could not be an invitee. There is nothing in the record to indicate that he was upon the premises of the City for any reason other than his own benefit. The City did not charge Rowland admission, nor did it expressly invite Rowland onto the premises. There was no mutual benefit that inured between the City and Rowland. It therefore necessarily follows that Rowland was either a licensee or a trespasser.

In the present case, it is not necessary for us to determine whether Rowland was a licensee or a trespasser because under either theory he may not recover. As previously stated, if Rowland was a trespasser, the only duty owed Rowland by the City was a duty not to injure him willfully, wantonly or through gross negligence. There is no assertion of gross negligence by Rowland. If Rowland was a licensee, then the City had a duty to warn or make safe any dangerous conditions of which the City had actual knowledge.

In order to determine whether the City had actual knowledge of the dangerous condition which caused Rowland's injuries, we must review two separate sets of facts, i. e., that Rowland hit his head "on the bottom," or that Rowland "hit his head" while surfacing from his dive.

On direct examination, Rowland testified that he hit his head "on the bottom." He stated that he had no knowledge of any protrusions on the bottom of the bay. There was no testimony by the two city marina employees as to the condition of the bottom of the bay. This evidence could not give rise to an inference that the City had actual knowledge of the dangerous condition "on the bottom." The City's duty to Rowland did not extend to the making safe or to warn Rowland of each and every geological formation on the bottom of the bay. See: *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976).

When one regards the evidence that Rowland hit his head as he was surfacing from his dive, the following testimony and evidence must be considered: There were pictures of the area in which Rowland dove which indicated that there was a drain pipe and a sign reading "Caution Deep Water Lower Steps Slippery When Wet" located in the general area. There were no "No Swimming" signs posted in the area of the accident. However, the City ordinance prohibiting swimming was introduced by Rowland himself. Two marina employees testified that the no-swimming ordinance was enforced in the area. The only type of swimming that was allowed was swimming in connection with some other activity, such as falling overboard from a boat, mounting waterskis, upsetting a small sailboat and falling off ski-jets or surf-sails.

Mr. Guy, one of the marina employees, testified that swimming was not allowed because of the dangerous undercurrents. This same employee also stated that if he saw someone swimming in the area he would stop and inform them that " . . . there is no swimming and it's dangerous, and it's dangerous only because I know it's dangerous. I don't know whether anybody else would say that. . . ."

Mr. Gable, the marina superintendent, testified that swimming was not allowed in the area because of moving watercraft. He further testified that he had been with the marina for about 14 years and that during that time, he had only seen people (intentionally) swimming in the area on approximately three occasions.

Mr. Rowland testified to the following:
"Q: . . . All right, when you dove into the water, did you have your hands extended out in front of your head?

A: They were.

Q: Did your hands ever come in contact with anything?

A: No, they never did.

Q: All right, and do you remember telling me in your deposition that the contact that you made with whatev-

er you came in contact with was as you were on your way up?

A: Somewhat, yes, sir.

Q: In other words, so the jury will understand, you had dived into the water, gone to the lowest point of your dive, and you were on your way, just on your way back towards the surface when you collided with something?

A: Yes, sir, just coming up."

After reviewing all of the evidence in the light most favorable to the jury's verdict, we hold that there is no evidence from which the jury could have found that the City had *actual knowledge* of the dangerous condition upon which Rowland struck his head. See: *State v. Tennison,* 509 S.W.2d 560 (Tex.1974).

 Rowland contends in his last point of error that the trial court erred in excluding the tendered testimony of Lynn Tate as either direct or impeachment evidence against the marina superintendent. The testimony tendered was to the effect that Mr. Gable, the marina superintendent, had expressly advised Tate by telephone that swimming activities were permitted in the area where Rowland was injured. Mr. Gable denied such a conversation. Rowland argues that Mr. Tate's testimony was admissible both for impeachment and as direct evidence against the City, and therefore the trial court committed reversible error in excluding such testimony.

Mr. Tate, through his bill of exceptions, testified that he had called the Corpus Christi Marina the week before the trial and talked to a man who identified himself as George Gable. Mr. Tate asked Mr. Gable if waterskiing was permitted in the area.

Upon an affirmative answer, Tate asked if it would be permissible to stop and have lunch or to swim in an area north of the T-heads. He was informed that such an activity was allowed. On cross-examination, Tate admitted that he had never met Mr. Gable; that he did not recognize Gable's voice over the telephone; that he had never had training in voice recognition; and that he could not remember the exact words of the conversation.

The City admitted that waterskiing was allowed in the area and that swimming in connection with this activity was also allowed. Even if we construe the evidence in the record as allowing swimming in an "area north of the T-heads", such evidence was not direct evidence that swimming was permitted by the City in the area in which Rowland sustained his injury.

 To support a reversal based upon the exclusion of the proffered testimony, Rowland had the burden of showing that the action of the trial judge in excluding such testimony was reasonably calculated to cause and probably did cause the rendition of an improper verdict. Rule 434, T.R.C.P.; *Texas Employers' Insurance Association v. Garza,* 557 S.W.2d 843 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). Rowland did not meet his Rule 434 burden. Rowland's last point of error is overruled.

Judgment of the trial court is affirmed.